O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON WEST, | ) | CASE NO. SA CV 12-00962 RZ |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of  Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff suffers from poorly controlled diabetes mellitus.  Her blood sugars fluctuate wildly and uncontrollably, and she has hypoglycemic unawareness — meaning that she often does not know when her blood sugars have gotten so low that they are out of control.  When her blood sugars get out of control, she can lose feeling in her limbs, or can be unexpectedly belligerent, or can lose consciousness.  She has had to be hospitalized once, and frequently her husband has had to call 911 to revive her.  She kept a careful log of her wildly fluctuating blood sugars, showing a large variation, often on an hourly basis. All of this was undisputed.

Plaintiff's physician Dr. Anderson treated Plaintiff over several years, and was familiar with and verified this history.  He expressed his opinion that Plaintiff therefore was unable to work.  [AR 370]  Elsewhere he expressed this opinion in functional terms, that

1  her activities were limited because of the unpredictable, varying and unrecognized nature

2  of her hypoglycemic episodes [AR 393], facts which in his view made her unemployable.

3        The Administrative Law Judge rejected Dr. Anderson's opinion.  The only

4  comment that the Administrative Law Judge made about Dr. Anderson's opinion was that

5  it would not be given any "special significance" "[b]ecause the determination of disability

6  is exclusively reserved to the Commissioner."  [AR 43]  Instead, the Administrative Law

7  Judge relied on the testimony of Dr. Sami Nafoosi, who testified as a medical expert who

8  had reviewed the records but not examined Plaintiff. [AR 41, 43]  Dr. Nafoosi (apparently

9  erroneously identified as a board-certified internist), testified that there was no objective

10 evidence that Plaintiff could not complete an eight-hour day or forty-hour work week or

11 would miss three or more days of work in a month.  [AR 70; AR 43]  He also gave his

12 opinion that from June 30, 2007 through December 31, 2008 Plaintiff could perform any

13 work, with certain environmental restrictions; and that from January 1, 2009 to the present

14 she additionally had certain lifting and other restrictions.  [AR 68-69, 41]  Dr. Nafoosi, the

15 Administrative Law Judge noted, "had the opportunity to review the entire medical

16 evidence and to hear the claimant's testimony."  [AR 42]

17       The Administrative Law Judge's preference for Dr. Nafoosi's view over that

18 of the doctor who had treated Plaintiff for years was not in keeping with the standards

19 under the law.  Merely dismissing Dr. Anderson's opinion out of hand because it was

20 perceived as an opinion reserved to the Commissioner was not appropriate.  As the Court

21 said in *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001):

22

23         [A]n ALJ may reject a treating physician's uncontradicted

24         opinion on the ultimate issue of disability only with "clear and

25         convincing" reasons supported by substantial evidence in the

26         record.  *Reddick* [*v. Chater*], 157 F.3d [715] at 725 [(9th Cir.

27         1998)] (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th

28         Cir.1993) (internal quotation marks omitted)).  If the treating

physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons in order to reject the treating physician's opinion. *Id.*

Nor is it appropriate to give preference to Dr. Nafoosi's opinion over that of Dr. Anderson. To begin with, the notion that Dr. Nafoosi had the entire record before him and heard Plaintiff testify is not a meaningful distinction. Dr. Anderson knew the medical record also, and there was no testimony about Plaintiff's medical condition that the Administrative Law Judge identified that was not familiar to Dr. Anderson as well. In addition, however, a medical expert who does not examine the claimant but merely reviews the records cannot trump the opinion of a treating physician.

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester* [*v. Chater*], 81 F.3d at 830; 20 C.F.R. § 404.1527(d)." *Holohan, supra,* 246 F.3d at 1202. But even an examining physician's opinion must give way to a treating physician's opinion when it is not based on independent findings. As the Court said in *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007):

When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her own conclusions, the conclusions of the examining physician are not "substantial evidence."

The Court went on to contrast that situation with the situation where the examining physician made his own independent findings, in which case the findings can stand as substantial evidence. The Court then explained that "[i]ndependent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that

- 3 -

the treating physician has not herself considered . . . ." *Id.* (citations omitted.)  The medical expert here just reviewed the records.  He did not examine Plaintiff, and he did not make independent findings.  Under *Orn*, his opinion cannot take precedence over that of the treating physician Dr. Anderson.

In addition, the Administrative Law Judge's reliance on Dr. Nafoosi's opinion rests on an underlying fallacious premise.  Dr. Nafoosi gave little weight to the impact of Plaintiff's wildly fluctuating sugar levels, stating that "the criteria that we look at is that you have to — it has to be so severe that it requires frequent hospitalizations or emergency room visits, or that there are long-term complications from the diabetes that specifically affect the organs of the eye, the kidney, the ear or the nerves, and it doesn't — the records do not show that in your case."  [AR 69]  The Administrative Law Judge alluded to this testimony [AR 42] and, in this Court, the Commissioner points to this statement as evidence that Plaintiff has not proven that she is disabled.  (Defendant's Memorandum in Support of Answer 4:2-4.)  The Commissioner gives no citation to any regulation or case that says that end-organ damage or visits to the hospital are criteria for disability arising from diabetes.  The Court has been able to discover nothing of the sort either.  An internal Social Security Ruling giving examples of non-severe impairments does refer to end organ damage from diabetes, but that ruling was rescinded and not replaced.  *See* SSR 82-55, 1982 WL 31375 (S.S.A.)  Similarly, the Listing of Impairments in effect at the time of this decision refers to diabetes with certain damage to organs or limbs, *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 at 9.08 (2010), but there is no dispute as to whether Plaintiff met a listing.  On the other hand, *Martin v. Secretary of Department of Health, Education and Welfare*, 492 F.2d 905 (4th Cir. 1974), holds that end-organ damage *cannot* be a precondition for a finding of disability.  If, then, Dr. Nafoosi grounded his view of Plaintiff's residual functional capacity on the criteria he identified — numbers of hospital visits and absence of end-organ damage — that was not a basis for undermining the opinion of the treating physician as to Plaintiff's *inability* to function in the workplace.

1    Therefore, the opinion cannot be substantial evidence in support of the Commissioner's

2    decision, and her reliance on that opinion cannot justify upholding the decision.

3            Following the Administrative Law Judge's decision, the Appeals Council

4    granted Plaintiff's request to submit additional information.  [AR 1]  The Appeals Council

5    found that the new information did not provide a basis for changing the Administrative

6    Law Judge's decision.  [*Id.*]  The administrative record before the Court therefore includes

7    the entire record, including that before the Appeals Council when review was denied, and

8    this Court reviews the entire record.  *Brewes v. Commissioner of Social Security*, 632 F.3d

9    1157, 1161-63 (9th Cir. 2012); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-53 (9th Cir. 1993).

10           Included within the matters attached by order of the Appeals Council were two

11   impairment questionnaires filled out by treating physician Dr. Anderson, in July 2010 and

12   February 2011, and a similar questionnaire filled out by Dr. Nassir, a subsequent treating

13   physician, in August 2011.  Dr. Anderson gave his assessment of Plaintiff's capacity to sit

14   and stand/walk — less than 1 hour in an eight-hour work day.  He indicated that Plaintiff

15   would need to get up and move around every 20 minutes, and that she should never lift or

16   carry more than 5 pounds.  He included several other limitations as well.  [AR 404-09; 418-

17   23].  Dr. Nassir's opinion was similar.  [AR 429-36]  These questionnaires reinforce the

18   opinions in the materials that had been before the Administrative Law Judge: that the

19   treating physician thought that Plaintiff's capacity was limited, based on the course of

20   treatment over a period of time, and that he was opining on her limitations, not just on the

21   ultimate question of disability.

22           Neither the Administrative Law Judge nor Dr. Nafoosi saw these later

23   questionnaires, of course, but at most the questionnaires added details, not substantive

24   changes.  That is in fact what the Appeals Council ruled — that the new exhibits did not

25   change anything.  [AR 1]  What the new exhibits did, in fact, was to emphasize the error

26   of the Administrative Law Judge in adopting the opinion of Dr. Nafoosi over that of

27   treating physician Dr. Anderson.

28

The other error that the Administrative Law Judge made was that he gave insufficient weight to the testimony of the lay witnesses. Plaintiff's husband testified that reactions from her fluctuating sugar levels were unpredictable, that Plaintiff is unaware when her sugar level drops too low, that she cannot make simple decisions when that happens, that she can become quite agitated when she has an episode, that the episodes last anywhere from 20 minutes to almost an hour and a half, that she has these episodes five to ten times a month, that he has had to call for the paramedics to revive her, and that there was no predicting whether something as simple as orange juice or as dramatic as a direct injection of insulin from paramedics would be necessary to stabilize her. [AR 63-66] A friend, who was a co-worker and a nurse-practitioner, also submitted a statement discussing Plaintiff's hypoglycemic episodes, and stating that they had become more frequent and less controlled. [AR 162] The Administrative Law Judge disbelieved a different statement from the friend about Plaintiff's diabetic retinopathy [AR 43] but as to the other testimony from Plaintiff's husband and the friend, the Administrative Law Judge had only this to say:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements, along with the statements of Mr. West [Plaintiff's husband] and Ms. Ward [Plaintiff's former co-worker and current nurse-practitioner], concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[AR 43] This rote recitation of a paragraph that appears in every decision by an administrative law judge that the Court has seen over the last several years cannot, without more, satisfy the standards for evaluating lay testimony. An administrative law judge must take lay witness testimony into account, unless he gives reasons germane to each witness

for disregarding the testimony. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). The consequences of not properly evaluating lay witness testimony are significant:

> "[W]e hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

*Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the lay testimony gave credence to Plaintiff's own testimony, and it was error to handle it so dismissively.

Under the circumstances of this case, the opinions of the treating physician as to Plaintiff's capacity are to be taken as true. *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989). Although it is difficult to imagine how, in that situation, a claimant could be determined not to be disabled, the record does not contain testimony from the vocational expert under such a hypothetical situation. Therefore, the Court has no evidentiary basis for saying whether an award of benefits should issue. Accordingly, the matter is remanded to the Commissioner for proceedings consistent with this memorandum opinion.

IT IS SO ORDERED.

DATED:  May 7, 2013

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE